UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cr-00156-LJM-KPF-1 |
| | ) | |
| TYLER SANDERS, | ) | |
|     Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on defendant's, Tyler Sanders ("Sanders"), Motion to Suppress and Request for *Franks* Hearing (Dkt. No. 29). *See Franks v. Deleware*, 438 U.S. 154 (1978). The motion was fully briefed, and on April 22, 2010, the Court **GRANTED** Sanders' request for a *Franks* hearing, which it held in conjunction with the hearing on Sanders' Motion to Suppress. At the hearing, the parties presented evidence regarding the events surrounding the application for the warrant that issued to search Sanders' residence on September 16, 2009 (the "Warrant"). Sanders asserts that Detective Aaron Tevebaugh's ("Detective Tevebaugh") search warrant affidavit (the "Affidavit") intentionally or recklessly omitted material information that was necessary to establish probable cause for the Warrant to issue. In addition, Sanders argues that the Affidavit does not contain sufficient factual information to establish probable cause to search Sanders' residence. Accordingly, Sanders' requests that the Court suppress all evidence obtained as a direct result of the September 16, 2009, search of his residence.[1]

---

[1] The Government argues that any evidence that was on Sanders' person when he was stopped and arrested for possession of marijuana should not be suppressed, because that evidence would have inevitably been discovered by lawful means. *See U.S. v. Jones*, 72 F.3d 1324, 1330 (7th Cir. 1995) ("[T]he inevitable discovery exception

## I. BACKGROUND

On September 16, 2009, Detective Tevebaugh submitted the Affidavit to a Marion County Superior Court Commissioner (the "Commissioner") who, on the same date, authorized the search of Sanders' residence. Def.'s Exs. C, D. Both parties agree that the Affidavit contains all the information that caused the Warrant to issue. Accordingly, "the warrant must stand or fall solely on the contents of the affidavit." *U.S. v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

The investigation of Sanders commenced when a confidential informant ("CI") advised Detective Tevebaugh that a black male who weighed approximately 230 pounds, known to the CI as "Tyler," was selling or delivering cocaine in Indianapolis. Def.'s Ex. C. Specifically, the Affidavit states that "'Tyler' did not have a job and drove around the city delivering cocaine all day every day." *Id.* at 4. The CI informed Detective Tevebaugh that "Tyler" lived in the area of 10th and College. *Id.* During the course of his investigation, Detective Tevebaugh located a photograph of a black male who matched the physical description given to him by the CI. *Id.* Detective Tevebaugh showed the photograph of Sanders to the CI. *Id.* The CI confirmed that the photo was of the man known to him as "Tyler." *Id.* In addition, Detective Tevebaugh found a police report that listed Sanders' address as 515 N. College. *Id.* Detective Tevebaugh reviewed Sanders' criminal history

---

to the [exclusionary] rule permits the introduction of evidence that eventually would have been located had there been no error[.]"). However, although Sanders mentioned this evidence in his Motion to Suppress, he has not argued that the search of his person was illegal or that the evidence obtained as a result should be suppressed. Accordingly, the Government's argument is inapplicable to Sanders' Motion to Suppress.

and noticed that Sanders was the defendant in a pending criminal case in Marion County for dealing cocaine. *Id.* Sanders has also been arrested several times on narcotics and firearm charges. *Id.* The CI informed Detective Tevebaugh that Sanders drove a new blue minivan and a new white Impala or Malibu. *Id.*

The CI placed a phone call to Sanders and ordered nine ounces of cocaine. *Id.* Sanders instructed the CI to meet him at the National City Bank in the 1700 block of North Meridian Street. *Id.* at 5. Detective Tevebaugh and the CI went to the National City Bank parking lot, where they observed a maroon Dodge pull into the parking lot. *Id.* There were two black males inside the maroon Dodge. *Id.* They drove the maroon Dodge around the parking lot as if they were attempting to locate someone or something. *Id.* Then, a blue Kia minivan entered the parking lot. *Id.* The CI identified Sanders as the driver. *Id.* The passenger of the maroon Dodge exited the vehicle and briefly met with Sanders. *Id.* The passenger went back to the maroon Dodge, and Sanders entered the "business" at 1700 North Meridian. *Id.* After approximately 10 or 15 minutes, Sanders exited the "business" and he and the passenger of the maroon Dodge met again in Sanders' blue minivan. *Id.* During their meeting, Detective Christopher Bailey witnessed Sanders, who was sitting in the driver's seat of the blue minivan, reach into the center console area. *Id.* Then, the individual who was sitting in the passenger's seat stuffed a large object down the front of his pants and exited the blue minivan. *Id.*

"Sanders made several phone calls to the [CI] during the time that the [passenger from the maroon Dodge] was in[side the blue minivan] that were unanswered." *Id.* Then, the passenger from the maroon Dodge exited the blue minivan, and he and Sanders left in their respective vehicles. *Id.* Detective Tevebaugh ran a license plate check of the blue

minivan and discovered that it was registered to a Thrifty rental car office. *Id.* Detective Tevebaugh knew from his training and experience that individuals who traffic narcotics commonly utilize rental vehicles to transport the controlled substances. *Id.*

On September 11, 2009, Detective Tevebaugh witnessed a white Impala parked at Sanders' residence. *Id.* Sanders sat in the driver's seat for a long period of time. *Id.* On September 14, 2009, Detective Tevebaugh again conducted surveillance of Sanders' residence. *Id.* He witnessed Sanders sitting in the driver's seat of the same blue minivan that Detective Tevebaugh observed during his National City Bank surveillance. *Id.*

On September 16, 2009, Sanders exited his residence and drove away in a white Ford Expedition. *Id.* at 6. At the Meridian Street exit off of I-65, Detective Prendergast clocked Sanders going seventy-five miles-per-hour in a fifty mile-per-hour zone. *Id.* Officer Kelly initiated a traffic stop and immediately smelled what he believed to be burnt marijuana. *Id.* As a result, Officer Kelly detained Sanders. *Id.* Officer Hartman then arrived on the scene with his narcotics detection canine. *Id.* The canine gave a positive indication for the odor of narcotics in the vehicle. *Id.* A search of Sanders' vehicle uncovered "amounts" of marijuana in three locations. *Id.* Sanders told Officer Kibbey that he smoked marijuana earlier in the day, and Officer Kibbey placed Sanders under arrest for possession of marijuana. *Id.*

Officer Kibbey transported Sanders to his residence. *Id.* Upon arriving at Sanders' residence, Officer Kibbey exited his vehicle to stand on the sidewalk that runs parallel to the front of Sanders' residence. Def.'s Ex. A. From there, Officer Kibbey could smell a strong odor of what he believed to be green marijuana. Def.'s Ex. C. Based on the

foregoing information, Detective Tevebaugh applied for the Warrant to search Sanders' residence.  Dkt. No. 29-3 at 3.

Shortly after the Warrant issued, law enforcement officers searched Sanders' residence and found, among other things, large amounts of cocaine, a cooking pan, a digital scale, and over $65,000.00 in U.S. currency.  Dkt. No. 29-3.  In addition, while Sanders used the restroom, a law enforcement officer discovered that he had been secreting 4.13 grams of marijuana and 20.60 grams of cocaine in his anus and $870.00 in U.S. currency on his person.  *Id.*

## II.  STANDARDS

### A.  THE FOURTH AMENDMENT

Absent certain exceptions that are not applicable here, "police must obtain a warrant from a neutral and disinterested magistrate before commencing a search."  *U.S. v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006).  When, as in this case, the affidavit in support of the warrant is the only evidence presented to the warrant-issuing magistrate, the affidavit must establish probable cause or the search is unjustified.  *Id.* at 738.  "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime."  *Id.*  "[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical . . . manner."  *U.S. v. Ventresca*, 380 U.S. 102, 109 (1965).  Close-calls should usually be resolved in favor of the warrant's validity, because the magistrate, "who has considerable experience evaluating affidavits in support of search warrants . . . , is in the best position to determine

if probable cause exists." *U.S. v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982); *see also Ventresca*, 380 U.S. at 109.

### B.  ANONYMOUS INFORMANTS

When an affidavit includes information from an anonymous or confidential informant, "the sufficiency of the affidavit and, specifically, the sufficiency of the allegations of reliability of an informant, should be assessed by evaluating the totality of the circumstances in indicating that the informant's information is reliable." *U.S. v. Hendrix*, 752 F.2d 1226, 1233 (7th Cir. 1985). Blanket assertions that the affiant "has cause to suspect and does believe" will not suffice. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Rather "the affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause[.]" *Id.*

When an assertion of probable cause is based upon a confidential informant's tip, a court's totality of the circumstances inquiry "focuses on the informant's reliability, veracity, and basis of knowledge." *U.S. v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010). The five factors that inform the analysis include:  (1) the degree to which the informant has acquired knowledge of the events through firsthand observation; (2) the amount of detail provided in the informant's statement; (3) the interval between the date of the events and the police officer's application for the search warrant; (4) the extent to which the police have corroborated the informant's statements; and (5) whether the informant appeared before the magistrate who issued the warrant. *U.S. v. Hollingsworth*, 495 F.3d 795, 804 (7th Cir. 2007). "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *U.S. v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999).

### III. **DISCUSSION**

Shortly before the April 22, 2010 hearing, it came to light that Detective Tevebaugh knew that Officer Hartman's narcotics detection canine was at Sanders' residence on September 16, 2009, and did not alert for the odor of narcotics. Dkt. No. 37. However, Detective Tevebaugh did not include this information in the Affidavit. Sanders argues that it was, at least, reckless for Detective Tevebaugh to omit from the Affidavit that a trained narcotics detection canine apparently did not detect the same aroma emanating from Sanders' residence that Officer Kibbey claimed to detect. The Court agrees. However, the Court does not agree that Detective Tevebaugh recklessly or intentionally omitted the amount of marijuana that was recovered from Sanders' vehicle. The marijuana was not weighed until the following day, and to say that "amounts" of marijuana were recovered from Sanders' vehicle is not a false statement. Def.'s Ex. E. Accordingly, the Court must decide whether, incorporating the material information that the Court determined was recklessly omitted from the Affidavit, probable cause existed to support the search of Sanders' residence. *Franks v. Delaware*, 438 U.S. 154, 156 (1978); *U.S. v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008).

As to that issue, Sanders argues that the Affidavit fails to establish the reliability or credibility of the confidential informant upon which Detective Tevebaugh relied. *Hollingsworth*, 495 F.3d at 804. With the *Hollingsworth* factors in mind, the Court notes that the Affidavit is devoid of information regarding the degree to which the CI acquired knowledge of Sanders' purported drug dealing activities through firsthand observation. Def.'s Ex. C at 4. After reading the Affidavit, the Commissioner could not possibly have known whether the CI purchased cocaine from Sanders in the past or witnessed Sanders

7

deliver cocaine to someone else, to say nothing of the possibility that the CI relayed second-hand information to Detective Tevebaugh or, at one time, was a potential co-defendant in this case. Similarly, the Affidavit contains only scant information from which the Commissioner could have determined whether the CI knew the pattern or practice by which Sanders conducted his suspected criminal activity. *Id.* The Affidavit merely states that Sanders "drove around the city delivering cocaine all day[,] every day." *Id.* In addition, although the Affidavit mentions the date on which Detective Tevebaugh first received information that Sanders was dealing cocaine, it does not mention who it was that relayed this information to Detective Tevebaugh, nor does it give any indication whether the information was stale or fresh. *Id.* Furthermore, the Court notes that the Government has not argued that the CI testified before the Commissioner who issued the Warrant. *See Koerth*, 312 F.3d at 868 (holding the search warrant invalid, in part, because the affidavit in support of the search warrant relied on information from a confidential informant who did not testify before the issuing magistrate).

The Affidavit provides some details that serve to, at least, ensure that the CI was familiar with Sanders. For instance, Detective Tevebaugh confirmed that Sanders lived at an address in the general vicinity of the location that the CI claimed Sanders resided. *Id.* He also confirmed that Sanders met the physical description given to him by the CI. *Id.* Lastly, Detective Tevebaugh confirmed that Sanders drove vehicles that met the descriptions given to him by the CI. *Id.* at 4-5. "Accuracy on these innocent facts is important[,] but does not directly bolster the [CI's] claim" that Sanders was selling or delivering cocaine in Indianapolis. *U.S. v. Dismuke*, 593 F.3d 582, 588 (7th Cir. 2010).

Another potential basis for relying on the CI's claim is Detective Tevebaugh's description of the events that transpired in the National City Bank parking lot. The Affidavit states that "the [CI] placed a phone call to Tyler Sanders and ordered nine ounces of cocaine." Def.'s Ex. C at 4. Then, "Tyler Sanders instructed the [CI] to go to the National City Bank . . . to complete the transaction." *Id.* at 5. From this information, there is no way for the reader to know whether Detective Tevebaugh was directly listening to a conversation between Sanders and the CI, whether Detective Tevebaugh only heard the CI's end of the conversation, or whether the CI relayed this information to Detective Tevebaugh after the conversation between the CI and Sanders took place. Given the ambiguous nature of what eventually transpired, such facts were necessary to provide a basis upon which the Commissioner could corroborate the CI's claim. *See U.S. v. McNeal*, 82 F.Supp.2d 945, 953 (S.D. Ind. 2000) ("Absent some factual underpinning in the affidavit, the judge's intuition about the sequence and manner of occurrence of the events is more than a reasonable inference would allow.").

Based on the Affidavit, the reader cannot tell what, if anything, transpired in the National City Bank parking lot. According to the Affidavit, "Sanders made several phone calls to the [CI] during th[is] time . . . that were unanswered." Def.'s Ex. C at 5. Once again, the reader cannot know from this statement how Detective Tevebaugh knew that Sanders was calling the CI or why the CI, or whomever else was in possession of the phone, did not answer Sanders' calls.

After Sanders entered and exited the "business," presumably the National City Bank, he met with an unidentified individual in the blue minivan for approximately ten minutes. *Id.* During this time, the unidentified individual appeared to stuff something down the front

of his pants and, after the unidentified individual exited the blue minivan, both he and Sanders drove away in their respective vehicles. *Id.* Because law enforcement officers lost both vehicles in traffic, there is no way for the reader to know what, if anything, changed hands. *Id.*

The Government asserts that the Affidavit contains additional information that bolsters the reliability of the CI's claim and establishes probable cause to search Sanders' residence. *See Olson*, 408 F.3d at 372 ("When assessed on an individual basis, each bit here may not provide much, but . . . altogether [they] provide enough to establish probable cause.") (internal citation omitted). For instance, Detective Tevebaugh ran a license plate check on the blue minivan and discovered that it belonged to a Thrifty car rental. Def.'s Ex. C at 5. Based on Detective Tevebaugh's training and experience, upon which the Commissioner was entitled to rely, individuals who traffic narcotics often utilize rental vehicles to evade police investigations and neutralize the threat of forfeiture proceedings. *Id.*; *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991). In addition, a check of Sanders' criminal record revealed that Sanders "had a pending case in Marion County for dealing cocaine as an A felony along with several other arrests for narcotics and firearm charges." Def.'s Ex. C at 4; *see U.S. v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) ("Alone, a record check cannot serve to corroborate an informant's account."). Lastly, on September 16, 2009, law enforcement officers initiated a traffic stop while Sanders was driving north on I-65. Def.'s Ex. C at 6. After detecting the odor of burnt marijuana, a search of the vehicle uncovered "amounts" of marijuana. *Id.* For all the Commissioner could have known, the quantity of the marijuana was slight, indicating recreational use and not "drug trafficking activities." *U.S. v. Hoffman*, 519 F.3d 672, 676 (7th Cir. 2008) ("[T]he

presence of narcotics in a defendant's car does not, by itself, establish probable cause to search his home[.]").

With the foregoing standards in mind, the Court notes that the Warrant authorized the executing officers to search for and seize both cocaine and marijuana. The Affidavit contains hardly any information that would purport to link Sanders' residence to the existence of marijuana. Officer Kibbey stated that he smelled a strong odor of raw marijuana emanating from Sanders' residence, but considering that a trained narcotics detection canine did not indicate for the presence of narcotics, a reasonably prudent person would have been skeptical, if not wholly dismissive, of Officer Kibbey's claim. This leaves only the "amount[]" of marijuana found in Sanders' vehicle, which without more, fails to establish probable cause to search Sanders' residence. *Hoffman*, 519 F.3d at 676.

However, marijuana was not the controlled substance with which Detective Tevebaugh was primarily concerned. With regard to dealing cocaine, the original basis for Detective Tevebaugh's investigation, the Affidavit is devoid of any indication that the CI, Detective Tevebaugh, or any other individual personally observed Sanders selling or delivering cocaine in Indianapolis. The Court is unaware of any case where a search warrant was upheld notwithstanding the failure of the supporting affidavit to affirm that the suspect was personally observed engaging in criminal activity at some place and time. *Cf. Koerth*, 312 F.3d at 867-68 (holding that the search warrant at issue was invalid, although the affidavit stated that the informant was "at [Koerth's] house on Thursday, Aug[ust] 29, 2000, and witnessed a large amount of marijuana.")

Even assuming for a moment that the CI's claim that Sanders "drove around the city delivering cocaine all day" is true, the Affidavit still lacks a reasonable basis for finding

probable cause to search Sanders' residence. "Case law requires a . . . nexus between the evidence sought and the location to be searched." *McNeal*, 82 F.Supp.2d at 958. Much the same as the affidavit at issue in *McNeal*, the Affidavit in this case does not provide the "necessary link between the evidence sought and the place to be searched." *Id.* at 959. To quote language from that case that is equally applicable here:

> There is no evidence that any drug deals took place in the vicinity of [McNeal's] residence . . . . In contrast with [*U.S. v.*] *Singleton*, [125 F.3d 1097, 1102-03 (7th Cir. 1997); *U.S. v.*] *Sleet*, [54 F.3d 303, 306-07 (7th Cir. 1995);] and *Lamon*, [920 F.2d at 1188-90] the affidavit contains no indication that McNeal . . . was . . . ever observed by the CI, Detective Forrest or anyone, at, coming from or going to (or toward) [McNeal's residence] either just before or after a drug deal . . . . Furthermore, the source of the information connecting McNeal to illegal drug activity has not been shown to be reliable as in *Sleet*, *Lamon*[,] and [*U.S. v.*] *Angulo-Lopez*, [791 F.2d 1394, 1395-96 (9th Cir. 1986)]. And significantly, there is not even a suggestion in the affidavit that McNeal bought or sold illegal drugs on the premises . . . .

*Id.*

The Court notes that unlike the defendant in *McNeal*, there is no dispute in this case that Sanders lived at the residence for which the search warrant issued. *Cf. id.* at 957. The Court is also aware of the line of cases that stand for "the proposition that evidence of drug dealing is likely kept where the drug dealers live." *Id.* However, in this case, after reading the Affidavit, the reader is left to believe that the opposite is true:

> Individuals involved in the trafficking of controlled substances often use residences or other buildings or structures where they do not generally reside to conduct controlled substances transactions, to prepare and store controlled substances prior to delivery or to use controlled substances. These residences or other buildings are sometimes referred to as "stash houses."

Def.'s Ex. C at 2.

In summary, after considering the totality of the circumstances, the Court concludes that the Affidavit in support of the Warrant to search Sanders' residence does not reflect a fair probability that contraband would be found there.

The Court's inquiry does not end there, however. Under the good faith doctrine, "evidence recovered during the execution of a facially-valid search warrant that is later invalidated by the courts is not always subject to suppression." *U.S. v. Sleet*, 54 F.3d 303, 307 (7th Cir. 1995). The burden now shifts to the Government to establish that Detective Tevebaugh relied in good faith on the Commissioner's decision to accept the Affidavit and issue the Warrant. *Koerth*, 312 F.3d at 868. Detective Tevebaugh's decision to obtain the Warrant is *prima facie* evidence that he was acting in good faith. *Id.* But, Sanders attempts to rebut the Goverment's *prima facie* case by establishing that Detective Tevebaugh submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *U.S. v. Leon*, 468 U.S. 897, 923 (1984). Accordingly, the Court will admit the evidence unless:

> (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer 'would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'

*Koerth*, 312 F.3d at 869 (7th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

The Court concludes that the Affidavit prepared by Detective Tevebaugh was plainly deficient. No reasonably well-trained law enforcement officer would read an affidavit that (1) fails to provide a single example of any individual who observed the suspect engaging

in the activity for which the investigation began and (2) fails to link the suspected activity, dealing cocaine, with the suspect's residence, and still conclude that probable cause exists to search the suspect's residence.  *Cf. Koerth*, 312 F.3d at 870 (holding that the good faith exception to the exclusionary rule applied where the affiant relied on a named informant and a "practical, common-sense reading of the affidavit . . . reveal[ed] that [the informant] had purchased drugs from the [criminal suspect] on prior occassions[.]"); *see McNeal*, 82 F.Supp.2d at 964 (holding that the good faith exception did not apply, because no reasonably well-trained officer would have relied on an affidavit that provided no reason to rely on a confidential informant's information, no drug related activity at or near the location to be searched, and nothing but an inferential link of the suspect to that location). Accordingly, the good faith doctrine is inapplicable to the facts of this case, and the evidence seized as a direct result of searching Sanders' residence, located at 515 N. College, should be suppressed.

## IV. **CONCLUSION**

For the foregoing reasons, defendant's, Tyler Sanders, Motion to Suppress is **GRANTED**.  The following evidence, which was directly seized during the September 16, 2009, search of 515 N. College is hereby suppressed: (1) approximately 44.88 grams of crack cocaine; (2) approximately 462.1 grams of powder cocaine; (3) a hammer and a digital scale, which both contained trace amounts of cocaine residue; (4) 0.54 grams of marijuana that was located in an ashtray on the kitchen counter; (5) a cooking pan that was located on the kitchen stove and contained trace amounts of cocaine residue; (6) $7,161.00

in U.S. currency that was found in the garage of the residence; (7) $57,980.00 in U.S. currency that was also found in the garage of the residence; (8) a blue Yamaha scooter; (9) a 2008 Mercedes Benz S550; (10) a set of Nortech security cameras; and (11) three 42" flat screen televisions, a 27" flat screen television, two PlayStation 3 video game units, a pair of diamond stud earrings, and a set of Asanti Wheels.

      IT IS SO ORDERED this 5th day of May, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Jack Crawford
CRAWFORD & DEVANE
crawdevlaw@indy.rr.com

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov